**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
**AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE**

DATE: April 1, 2011
CASE NO.:_____

My name is Martin J. Donovan.  My address is 7 Cobblestone Court, Naugatuck, Connecticut 06770-3355.

The respondent is Yale University, Yale University School of Medicine, which is located at 333 Cedar Street, New Haven, CT 06510.

I was
(X) discharged
( ) suspended
( ) placed on probation
( ) earning a different rate of pay
(X) demoted
(X) warned
(X) given poor evaluation
( ) denied a raise
( ) less trained
( ) denied an office
( ) harassed

( ) not hired/not promoted
( ) not rented a dwelling
( ) denied sale of dwelling
( ) aiding and abetting
( ) denied union representation
( ) constructively discharged
( ) retaliated
( ) not hired/reinstated due to
    a BFOQ
( ) terminated due to disability
( ) not reinstated due to a disability

on an ongoing basis, and believe that my:
( ) race
( ) color
( ) sex
( ) pregnancy
( ) ancestry
(X) age
   DOB: 12/23/48
( ) religion

( ) national origin
( ) marital status
( ) physical disability
( ) mental retardation
( ) religious creed
( ) familial status
( ) sexual orientation

( ) mental disorder
( ) alienage
( )  previously opposed,
    filed or assisted
( ) learning disability
( ) creed

was in part a factor in this action.  I believe that the respondent violated the following Connecticut General Statutes Sections enforced through Section 46a-58(a) and acts listed below:

(X) 46a-58(a)
(X) 46a-60(a)(1)
( ) 46a-60(a)(4)
( ) 46a-60(a)(3)
( ) 46a-60(a)(5)
( ) 46a-60(a)(7)( )( )( )( )( )
( ) 46a-60(a)(8)( )( )( )( )( )

( )Title VII of the Civil Rights Act of 1964,
  as amended by the Civil Rights Act of 1991
(X)Age Discrimination in Employment Act of
  1967, 29 U.S.C. 621-634
( ) Americans With Disabilities
  Act, 42 U.S.C. Title I

( ) 46a-64( )( )( )                                ( ) Equal Pay Act of 1964
( ) 46a-64c(a)( )( )( )                            ( ) Sec. 504 of Rehabilitation
( ) 46a-64c(a)(4)(A)                                  Act of 1973, as amended
( ) 46a-64c( )( )                                  ( ) Title VIII of Civil Rights
( ) Sec. 3(1) of PA 91-58                             Act of 1968, as amended by
                                                      Fair Housing Amendment Act
                                                      of 1988 (U.S.C. 3600-6620)

**THE PARTICULARS OF MY COMPLAINT ARE AS FOLLOWS:**

1.  I, Martin J. Donovan, am the Complainant.  I was born on December 23, 1948.

2.  At all times relevant to the instant complaint, I was employed by the respondent Yale University.

3.  At all times relevant to the instant complaint, the respondent was and is an employer with more than 100 employees.

4.  I have been employed in the Yale-New Haven Medical Center for 32 years.  For the first 20 years of my employment, I worked in the Yale-New Haven Hospital.  For the past twelve years to the present, I have been employed by the respondent in the Yale University School of Medicine.

5.  Initially, I was Director of Finance for the Yale Medical Group, ("YMG") of the respondent's  School of Medicine.  The YMG is the administrative, billing and collecting arm for the School's various clinical practices.

6.  During my eight years as Director of Finance, I played a significant role in turning the YMG organization from a deficit organization to one that operated with a surplus.

7.  Due to the excellence of my work, in February, 2006, I was asked to become the interim Administrator for the Department of Ophthalmology & Visual Science in addition to my role in the YMG.

8.  I did this from February, 2006 until August, 2006.  Due to the excellence of my work and my proficiency at this position, I was asked to take the position of Administrator on a permanent basis.  On October 1, 2006, I joined the newly appointed chairman of the Department, James C. Tsai, M.D.

9.  My annual reviews have always been excellent and my working relationships with all staff have always been excellent.  In my annual reviews it was noted that "Marty is genuinely respected by Faculty and Staff".

10.  The Department has been in deficit for approximately 20 years.  The goal of Dr. Tsai was to turn the deficit into a surplus.  As the result of my hard work, the deficit was decreasing annually, although not at the rate Tsai promised to the Dean's Office.

11. In March 2010, the Billing Manager, Mary Schwall, left the respondent University. After she left, it was discovered that Ms. Schwall had hidden $300,000 worth of invoices, and failed to act on the collection of these invoices. Once this was discovered I immediately informed Dr. Tsai.

12. Under my direction, YMG staff immediately began working the previously hidden invoices so that we could collect our funds.

13. As my Department was exceeding previous years clinical collections and was nearly 20% ahead of the previous year, there were no indications that Schwall was hiding invoices and that they were not being collected. I informed the respondent of this, and it had no reply.

14. In May, 2010, the Assistant Dean for Finance of the respondent, Carrie Capezzone, contacted me and informed me that at a meeting of the respondent it was stated that I was planning on retiring.

15. The Assistant Dean for Finance of the respondent is my superior.

16. I was shocked and alarmed, as I had no intention of retiring, and had never stated to anyone that I was even considering retirement.

17. Assistant Dean Capezzone contacted me and asked me when I was going to retire. I stated in no uncertain terms that I was not planning to, nor did I intend to retire. I told her that the respondent's claim that I was planning on retiring was categorically untrue. I informed Assistant Dean Capezzone that I had never stated to anyone that I was even considering retirement.

18. I asked Assistant Dean Capezzone who in the respondent claimed that I was considering retiring. Capezzone would not reveal to me where or from whom this statement came.

19. Several days later, I was summoned to meet Capezzone's boss, the Deputy Dean for Finance and Administration of the respondent, Cynthia Walker.

20. Deputy Dean for Finance and Administration of the respondent, Cynthia Walker is the head of the Finance and Administration department. Deputy Dean Walker reports directly to the Dean of the respondent's Yale School of Medicine. The Dean of the School of Medicine reports directly to the President of the respondent University.

21. During this meeting, Walker questioned me about my supposed intention to retire.

22. I informed Walker in no uncertain terms that I was not planning to, nor did I intend to retire. I told her that the respondent's claim that I was planning on retiring was categorically untrue. I informed Deputy Dean Walker that I had never stated to anyone that

I was even considering retirement.

23.   Shortly after this meeting, in which Deputy Dean Walker inquired about my fictitious plans to retire, Walker stated that the respondent has "lost confidence in me as a leader."

24.   Commencing after the false claims that I was intending to retire, the respondent began to falsely and unfairly criticize and scrutinize my work.

25.   The respondent falsely accused me of to failing to investigate the allegations that staff were handing out the business cards of a physician who once worked in the practice, but had since left.

26.   This is false.  I immediately investigated the allegations, and found them to be baseless.

27.   When the allegations were first brought to my attention, the Practice Manager, Pamela-Jean Berkheiser, and I met with the front desk personnel and inquired whether this was being done.  It was not.  I explained that if patients called or asked for information regarding physicians that were no longer part of the practice they were simply to say that they now practice elsewhere in the New Haven area.

28.   We also interviewed the Clinical Supervisor and advised her that at no time were any of her staff to give out information regarding physicians currently in competition with the Department.

29.   To further address the accusations, I brought the respondent's own Human Resources Department into the investigation.  A representative from that department of the respondent, Elena McHugh, met with two of the physicians making the accusations, Dr. Nils Loewen and Dr. C. Roberto Bernardino.  Neither of them offered proof that could be used to determine that anyone was handing out business cards.

30.   Despite my repeated and diligent investigation, no evidence indicated that the accusations were true.

31.   The respondent's own Human Resources Department determined that there was no evidence to substantiate the claims.

32.   Nevertheless, I was falsely blamed for Dr. Bernardino's leaving the Department, purportedly due to my handling of the unsubstantiated claims that staff were handing out a competitor's business cards.

33.   The respondent further falsely claimed that fee schedule changes were not

implemented, resulting in lost revenue to the Department.

34.  This is a totally false statement.  I  verified with the former Practice Manager that the changes were indeed implemented.

35.  The respondent further falsely alleged that I allowed the Practice Manager, Pam Berkheiser, to leave at 4:00 p.m. daily.  This is untrue.  The Practice Manager routinely was in by 7:00 a.m. and usually departed around 5:00 p.m.   Any early departures were for approved purposes, such as for medical appointments.

36.  On July 23, 2010, after the unlawful, age related statements about my fictitious intent to retire, the respondent ordered me into a meeting with Tsai and Walker .

37.   At that meeting, Tsai and Walker claimed that there was concern for my performance, but no specifics were explained.  Tsai and Walker claimed to have a "report" about my work at the respondent.  When I asked to see the report and about specific information, I was not allowed to see any report.  When I asked when I would be able to see the supposed report, I was told by that they would look into it.

38.  Prior to the unlawful, age related statements about my fictitious intent to retire, I was never informed of any concerns about my work performance.   My performance reviews were always excellent.

39.  Prior to the unlawful age based conduct of the respondent, there has never even been a complaint about my work performance, my managerial style or my interactions with staff and other employees of the respondent.

40.  After the statements, however, Tsai informed me that the respondent has no confidence in me and that I was "in a lot of trouble".

41.  After the statements, Walker stated that I should be concerned about my job.

42.  Shortly after meeting with Tsai and Walker, I had a meeting with Dr. M. Bruce Shields, Chairman Emeritus, of the respondent.  At that meeting, Dr. Shields asked if I was coming to meet with him to ask for a letter of recommendation.  I told him I didn't know that I needed one.

43.  On August 23, 2010, the respondent issued me a written warning.

44.  In that written warning, the respondent removed me from my position as Clinical Administrator.  The respondent demoted me to a temporary assignment with the Medical School Financial Operations Department of the respondent.

45.   The respondent stated that "At the end of the 90-day reassignment, your employment with Yale University will terminate."

46.   Despite its false claims to the contrary, the respondent has acknowledged my "valuable contributions" to special projects of the respondent and extended my termination date to February 28, 2011.

47.   Once again, due to the excellence of my work, my termination date was extended to March 31, 2011.

48.   On March 31, 2011, the respondent terminated my employment.

49.   Again recognizing my invaluable contributions, the respondent has forced me to accept a "casual" position, at a greatly reduced wage.

50.   The respondent has a history of discrimination on the basis of age.  The respondent treated the previous Administrator to hold my former position, who was approximately my age, in same unlawful manner.

51.   The reasons given by the respondent for my demotion and termination are pretextual.  The true reason for the conduct of the respondent is because of my age.

52.   For an extended period of time continuing to the date of my termination, I have been subjected to an ongoing pattern of harassment, discrimination and disparate treatment based upon my age.

53.   The conduct of the respondent and its agents, officers or employees has been continuous, persistent and unabated.  The actions of the respondent therefore constitute a continuing course of conduct.

54.   As detailed herein and continuing to the date of my termination, the respondent subjected me to an ongoing pattern of discrimination, harassment and disparate treatment based upon my age.  The conduct was continuous, persistent and ongoing.

**CHARGE OF DISCRIMINATION**                    (x) FEPA
                                                (x) EEOC

---------------------------------------------------------------------

Connecticut Commission on Human Rights & Opportunities and EEOC

---------------------------------------------------------------------

NAME                                HOME TELEPHONE NO.
Martin J. Donovan                            203-729-4014

---------------------------------------------------------------------

STREET ADDRESS          CITY, STATE & ZIP CODE          COUNTY

7 Cobblestone Court        Naugatuck, Connecticut 06770-3355     New Haven

---------------------------------------------------------------

NAME OF EMPLOYER WHO DISCRIMINATED AGAINST ME:
Yale University

---------------------------------------------------------------

| NAME | NO. OF EMPLOYEES | TELEPHONE NO. |
|------|------------------|---------------|
| Yale University | More than 100 | (203) 432-4771 |

---------------------------------------------------------------

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|----------------|--------------------------|
| 333 Cedar Street | New Haven, CT 06510 |

---------------------------------------------------------------

BECAUSE OF DISCRIMINATION BASED ON         DATE MOST RECENT OR
( ) RACE      ( ) COLOR      ( ) SEX         CONTINUOUS DISCRIM-
( ) RELIGION   ( ) NATIONAL ORIGIN          INATION TOOK PLACE:
(X) AGE      ( ) RETALIATION      ( ) OTHER      November 23, 2010

---------------------------------------------------------------

THE PARTICULARS ARE

The particulars of this charge of discrimination are set forth in my complaint
attached which I filed with the Connecticut Commission on Human Rights
and Opportunities on the date above, which is attached hereto and
incorporated herein as fully set forth herein.


I also want this charge filed
with the EEOC.

---------------------------------------------

I will advise the agencies if I            I swear or affirm that
change my address or telephone       I have read the above
number and I will cooperate fully      charge and that it is
with them in the processing of my     true to the best of my
charge in accordance with their       knowledge, information
procedures.                         and belief.


--------------------------------------     -------------------------------------------

I declare under penalty of perjury     SIGNATURE OF COMPLAINANT
that the foregoing is true and
correct.


SUBSCRIBED AND SWORN TO BEFORE ME THIS    DAY OF      , 2011.


-----------------------------------------------------------------(x)
COMMISSIONER OF SUPERIOR COURT/NOTARY