**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MARTIN J. DONOVAN** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO.:** |
| | : | **3:12 CV00549 (VLB)** |
| **vs.** | : | |
| | : | |
| **YALE UNIVERSITY** | : | |
| | : | |
| **Defendant** | : | **OCTOBER 10, 2013** |

**REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**[1]

## I. The Plaintiff's CFEPA Claim is Barred by the Statute of Limitations

The plaintiff argues that the 180 day time limitation for filing his complaint with the CHRO began on the actual date of his termination, i.e. March 31, 2011, rather than on the date that he received notice of his termination, i.e. August 23, 2010. (Memo. of Law in Opp. to Mot. for Summ. J., at pp. 25-29.) In support of this argument, the plaintiff relies upon the fact that he received two letters extending the date of his termination. See, Exhibits B and C to the Affidavit of Cynthia Walker. Case law is clear that a plaintiff must file a charge with the CHRO within 180 days from the time the plaintiff receives notice of the defendant's decision to terminate the plaintiff. See, Riddle v. Citigroup, 449 Fed. Appx. 66 (2d Cir. 2011) ("[t]o be timely, a charge must be filed [with the EEOC] within 180 days or 300

[1] The defendant notes that the plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment exceeds the forty page limit of Local Rule 7(a)(2) by twenty pages.

**days of the date on which the plaintiff <u>receives notice of her termination</u>, depending upon whether the plaintiff has initially instituted proceedings with a State or local agency capable of granting relief.") (Emphasis added.); <u>Hurtgam v. Lyndonville Cent. Sch.</u>, 446 Fed. Appx. 385, 386 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 126 (2012) (concluding that plaintiff was required to file charge with EEOC within 300 days of receiving notification that the school had made the decision to transfer her; the date the transfer was to take effect was irrelevant.); <u>Santiago v. Owens-Illinois, Inc.</u>, 477 F.Supp.2d 493, n. 2 (2007) (Arterton, J.) ("[T]he 180-day statute of limitations period for filing a CHRO charge runs not from the effective date of the adverse action complained of but from the date on which the plaintiff received notice of that action."); <u>Bogle-Assegai v. Connecticut</u>, 470 F.3d 498, 503, 507 (2d Cir. 2006) (affirming district court's grant of summary judgment because plaintiff failed to file a claim with the EEOC within 180 days of receiving notice of her impending termination); <u>McDougall v. Connecticut Comm'n on Human Rights& Opportunities</u>, 1999 Conn.Super. LEXIS 2673 *8 (October 5, 1999) (determining that the plaintiff was required to file his CHRO complaint within 180 days of being informed that his employer had decided to terminate him); <u>Yoonessi v. State Univ. of N.Y.</u>, 862 F.Supp. 1005, 1014 (W.D.N.Y. 1993), *aff'd* 862 F.Supp. 1005 (1994), *appeal denied*, 56 F.3d 10 (1995), *cert. denied*, 516 U.S. 1075 (1996), *aff'd*, 1998 U.S. App. LEXIS 24671 (2d Cir. September 30, 1998) ("The cases are clear that the time for filing a charge with**

**the EEOC or state agency begins to run on the date the plaintiff receives notice of the alleged discriminatory act, not on the date the decision actually takes effect….The relevant date is when the 'operative decision' was made, since it is the decision, rather than the actual termination itself, which is the basis of a discrimination claim.")[2]**

**The United States Supreme Court addressed this issue in Del. State College v. Ricks, 449 U.S. 250 (1980). In that case, the plaintiff alleged that the defendant discriminated against him on the basis of his national origin when it denied him tenure. The district court granted the defendant's motion to dismiss because the plaintiff had failed to file a complaint with the EEOC within 180 days of the date on which the defendant offered the plaintiff a one year terminal contract. The Court of Appeals for the Third Circuit reversed the district court's judgment, reasoning that "[a] terminated employee who is still working should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future." The Third Circuit believed that the initial decision to terminate an employee might be reversed,**

**[2] Although some of the cases cited address the time limit for filing a complaint with the EEOC, the analysis equally applies to the time limitation for filing a complaint with the CHRO. See, McDougall v. Connecticut Comm'n on Human Rights& Opportunities, 1999 Conn.Super. LEXIS 2673 *8 (October 5, 1999), citing State of Connecticut v. CHRO, 211 Conn. 464, 469 (1989) ("Reliance on federal law to interpret a state statute is not uncommon. Connecticut has previously looked to its federal counterpart when wrestling with how to interpret our state discriminatory employment statutes.")**

**and that the employee therefore should not be expected to resort to litigation until termination had actually occurred. Id. at 252-256.**

**On appeal to the United State Supreme Court, the plaintiff argued that discrimination motivated the defendant in denying him tenure and in terminating his employment the subsequent year. The Supreme Court determined that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. at 257. Since the plaintiff failed to allege any other acts of discrimination, the Supreme Court concluded that the "alleged discrimination occurred -- and the filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to [the plaintiff]. That is so even though one of the *effects* of the denial of tenure -- the eventual loss of a teaching position -- did not occur until later." Id. at 258. The Supreme Court explained that the "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." (Emphasis in original.) Id.**

**Comparing this matter to Santiago, the plaintiff claims that there are issues of fact "surrounding the scope of the notice received by the plaintiff – including when he actually received it, the effective date of termination, the date of notice, whether or not the plaintiff would be rehired in another position, the parameters of the employee's departure from employment, his eligibility for retirement – all**

**preclude disposition on summary judgment." (Memo. of Law in Opp. to Mot. for Summ. J., at p. 28-29.) First, there is no issue of material fact as to when the plaintiff received notification that the defendant had decided to remove him from his position of Clinical Administrator, reassign him to a 90 day temporary assignment, and terminate him at the end of that assignment. In his complaint, which is an admission, the plaintiff alleges that the defendant issued the plaintiff a written notice on August 23, 2010 that his employment with the defendant would terminate at the end of the 90 day reassignment. (Complaint, at ¶¶ 49-51.) The plaintiff testified that he received the defendant's August 23, 2010 letter during his meeting with Ms. Walker and Dr. Tsai on that same date. (Depo. Martin Donovan March 5, 2013, at pp. 45-46, 86.)[3]**

**Second, the effective date of termination, whether or not the plaintiff would be rehired in another position, the parameters of the employee's departure from employment, and the plaintiff's eligibility for retirement are all irrelevant to the question of whether the plaintiff timely filed his CHRO complaint. As explained above, the only relevant piece of information is the date on which the plaintiff received notification of the defendant's decision to terminate him. Since the plaintiff received that notification on August 23, 2010, the 180 day time period began to run at that time. The plaintiff failed to file a**

**[3] A copy of the plaintiff's deposition transcript is attached as Exhibits 1 through 6 to the plaintiff's Memorandum in Opposition to Motion for Summary Judgment.**

**complaint with the CHRO within 180 days of receiving notification of his impending termination; therefore, the plaintiff's CFEPA claim is time barred.**

## II. The Plaintiff Was Not Qualified for the Clinical Administrator Position

**The plaintiff points to the November 15, 2010 and February 21, 2011 letters as evidence that the plaintiff was qualified for the Clinical Administrator position. In those letters the defendant stated that the plaintiff made valuable and continued contributions "to the clinical accounts receivable and other projects." See, Exhibits B and C to the Affidavit of Cynthia Walker. At the time these letters were written, the plaintiff had been removed from his position as Clinical Administrator of the Ophthalmology Department and was temporarily reassigned to the Medical School Financial Operations. See, Exhibit A to the Affidavit of Cynthia Walker. Therefore, these letters do not demonstrate that the plaintiff was qualified for the Clinical Administrator position. The plaintiff also suggests that the plaintiff was qualified for his position because he was eligible to work for the defendant on a temporary basis. The fact that the plaintiff was competent to work temporarily in a different position fails to demonstrate that he was qualified for the Clinical Administrator position. Other than denying that his performance was deficient, the plaintiff has not produced any evidence refuting the defendant's position that, as discovered during the review of the Ophthalmology Department, the plaintiff was not qualified for the Clinical Administrator position. See, Memo. of Law in Supp. of Mot. for Summ.**

**J., at pp. 9-16. Indeed, the plaintiff admitted at his deposition that the defendant would be justified in replacing an employee who had the same deficiencies as attributed to him. (Depo. Martin Donovan March 5, 2013, at pp. 50-53, 56-76.)**

## III. The Plaintiff's Termination Did Not Occur Under Circumstances Giving Rise to an Inference of Discrimination

**Arguing that his termination occurred under circumstances giving rise to an inference of discrimination, the plaintiff compares the present case to Miller v. Hartford Fire Insurance, 652 F.Supp.2d 220 (D.Conn. 2009). He asserts that the court in Miller denied summary judgment because the sequence of events, i.e. identifying the plaintiff as eligible for retirement, placing the plaintiff on an improvement plan, and then terminating the plaintiff after he refused to retire, was sufficient to present the plaintiff's ADEA and CFEPA claims to the jury. (Memo. of Law in Opp. to Mot. for Summ. J., at p. 31.) The present case is distinguishable from Miller because, following the defendant's inquiries about the plaintiff's rumored plans to retire, but prior to the plaintiff receiving a written warning, the Yale Medical Group conducted a review of the Department of Ophthalmology. The decision to terminate the plaintiff was made after the Yale Medical Group issued its report. (Depo. Martin Donovan March 5, 2013, at pp. 117-119.)[4] It is significant that the plaintiff does not believe that the author of**

**[4] Plaintiff's lawyer claims that his client never received a copy of this report. (Memo. of Law in Opp. to Mot. for Summ. J., at p. 57.) However, the plaintiff admitted at his deposition that he received a copy of the report during the CHRO proceedings. (Depo. Martin Donovan March 5, 2013, at p. 95.)**

**the Yale Medical Group report, who recommended his termination, was motivated by age discrimination. (Depo. Martin Donovan March 5, 2013, at p. 118.)[5]**

**IV. The Plaintiff Has Not Offered Evidence Demonstrating that the Defendant's Reasons for the Termination are Pretextual**

**In his attempt to argue that the defendant's reasons for the plaintiff's termination are pretexutal, the plaintiff sets forth the allegations contained in his complaint and references the alleged statements of Ms. Walker and Dr. Tsai. The defendant has already addressed these allegations in its Memorandum of Law in Support of Motion for Summary Judgment, and therefore will not repeat its arguments in this Reply.**

**Although the plaintiff's lawyer asserts that "[e]ach of the claims of weakness or inadequacy on the part of the plaintiff are false, and were created by defendant as pretext to terminate the plaintiff," (Memo. of Law in Opp. to Mot. for Summ. J., at p. 52), the plaintiff agreed at his deposition that the author of the Yale Medical Group report honestly believed what was written in the report. (Depo. Martin Donovan March 5, 2013, at p. 118.) This statement belies the plaintiff's lawyer's suggestion that the report was pretextual.**

**[5] The plaintiff also refers to Ms. Walker's alleged statements regarding the plaintiff's plans to retire and Dr. Tsai's alleged comments on the ages of other individuals as evidence of discrimination. The defendant addressed those alleged statements at pages 16 to 20 of its Memorandum of Law in Support of Motion for Summary Judgment. The plaintiff has not refuted any of the defendant's arguments.**

**The plaintiff suggests that the November 15, 2010 and February 21, 2011 letters establish that the defendant's proffered reason of poor performance was pretextual. (Memo. of Law in Opp. to Mot. for Summ. J. at p. 58.) First, as noted above, the letters refer to the plaintiff's contributions in a different position from the Clinical Administrator position. Second, these letters actually demonstrate the absence of discrimination. Both letters were written by Ms. Walker, the same individual who terminated the plaintiff. Had she intended to discriminate against the plaintiff based upon his age, she would not have twice extended the plaintiff's temporary assignment in order to give the plaintiff more time to find other employment. (Affidavit of Cynthia Walker, at ¶¶ 9, 12.) In addition, the defendant would not have awarded the plaintiff retirement benefits, which allowed the plaintiff to receive payment for his vacation and sick time, collect a pension of $1,800 a month for the rest of his life, and work for the defendant on a temporary basis. (Depo. Martin Donovan March 5, 2013, at pp. 78-79.) The defendant's actions subsequent to removing the plaintiff from his position as Clinical Administrator demonstrate that the defendant did not discriminate against the plaintiff on the basis of his age.**

## V. The Plaintiff Has Failed to Allege Extreme and Outrageous Conduct

**The plaintiff has not even attempted to address any of the defendant's arguments on this issue. His opposition consists of two sentences: "The plaintiff has demonstrated that the defendant mistreated him, including falsely**

**accused him of incompetence and fired him, because of his age. Such conduct is intolerable in a civilized society." (Memo. of Law in Opp. to Mot. for Summ. J., at p. 60.) Connecticut law provides: "[A]n employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." (Internal quotations and citations omitted.) Nieves v. Avalonbay Cmtys., Inc., 2007 U.S. Dist. LEXIS 61777, 34 (D. Conn. Aug. 23, 2007) (Squatrito, J.). The plaintiff offers no evidence that the defendant terminated him in an egregious or oppressive manner. Indeed, the defendant's conduct following the plaintiff's termination disproves such a contention.**

## CONCLUSION

**For the foregoing reasons, and for those stated in the defendant's Memorandum of Law in Support of Motion for Summary Judgment, the defendant is entitled to judgment as a matter of law on all counts of the plaintiff's complaint.**

**THE DEFENDANT**
**YALE UNIVERSITY**

**BY: /s/ Patrick M. Noonan (#ct00189)**
**Patrick M. Noonan**
**Colleen Noonan Davis (#ct27773)**
**Donahue, Durham & Noonan, P.C.**
**741 Boston Post Road**
**Guilford, CT 06437**
**(203) 458-9168**

## CERTIFICATION

**I hereby certify that, on the above-written date, a copy of the foregoing Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.**

**/s/**
**Patrick M. Noonan**